UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


FILED
NOV 09 2011

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| ERIC CASTANEIRA, | * | CIV.10-4039 |
| Plaintiff, | * | |
| vs. | * | DEFAULT JUDGMENT |
| | * | AND PERMANENT INJUNCTION |
| MIDLAND NATIONAL LIFE INSURANCE COMPANY, et al., | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Based upon the motion, briefs, prior rulings, and entire record in this action, for each of the reasons stated by the Court on the record during the October 17, 2011 hearing, and for each of the reasons set forth below, Midland National's motion for default judgment, for damages, and for the entry of permanent injunctive relief is GRANTED, and FINAL JUDGMENT IS HEREBY ENTERED against Eric Castaneira ("Castaneira") and in favor of Midland National Life Insurance Company ("Midland National"). Specifically, and in support of this Judgment, this Court hereby finds as follows:

1. This Court issued a written notice of the September 21, 2010 hearing on the Motion for a Preliminary Injunction, delivered both by email and by U.S. mail to the email and mailing addresses of record provided by Castaneira.

2. Counsel for Midland National also delivered a copy of this Court's notice of hearing by sending the notice to Castaneira's email address (midlandnationalifereview@gmail.com) and by mailing the notice by regular mail.

3. Although the September 21st hearing was scheduled to begin at 9:00 a.m. C.T., the Court allowed an additional seventeen minutes for Castaneira to appear for the hearing, and did not commence the hearing until 9:17 a.m. Castaneira did not appear at the hearing and did not advise the Court or counsel for Midland National that he was

not going to appear for the hearing. An order for preliminary injunction was entered after the September 21, 2011 hearing. *See* September 23, 2011 Preliminary Injunction at Docket Number 51.

4. On October 15, 2010, Midland National filed a motion for contempt and a motion for default judgment, and supporting papers. *See* Docket Numbers 59-61. These motion papers were served upon Castaneira by U.S. mail and email, sent to the mailing and email addresses Castaneira has provided to counsel and the Court in this action. On September 8, 2011, this Court entered an Order dismissing Castaneira's affirmative claims against Midland National, and ordered that Castaneira personally appear and show cause why default judgment for damages and for permanent injunctive relief should not be entered against him on Midland National's counterclaims. The Court also ordered Midland National to be prepared to submit proof of its damages at the hearing, and to present its arguments for the entry of an order finding Castaneira in contempt of court. The hearing was originally scheduled for October 11, 2011, and then rescheduled for October 17, 2011. *See* Docket Numbers 64 and 75. Both the original and amended orders setting the show cause, default judgment, and contempt motion hearing were served upon Castaneira by U.S. mail and email.

5. On October 17, 2011, a hearing was held on Midland National's motion for contempt, order to show cause, and motion for the entry of default. Although the hearing was scheduled to begin at 10:00 a.m., the hearing did not commence until approximately 10:30 a.m. Despite prior notice having been given to Castaneira by U.S. mail and by email, and despite having been given an additional 30 minutes to appear at this hearing, Castaneira failed to appear as ordered. Midland presented the Court with a Complaint filed *pro se* in state court on July 15, 2011, by Castaneira against Chase Auto Finance Corporation which shows Castaneira is quite capable of responding in this case. The Court takes judicial notice of this Complaint pursuant to Federal Rule of Evidence 201. *See also Deford v. Soo Line R. Co.*, 867 F.2d 1080, 1087 (8th Cir. 1989) (taking judicial notice of pleadings filed in a separate action in a federal district court in Chicago).

6. Accordingly, default judgment is appropriately entered against Castaneira and in favor of Midland National on Midland National's tortious interference claim. The tort of tortious interference with valid business relationship or expectancy has the following elements: (1) existence of valid business relationship or expectancy, (2) knowledge by interferer of relationship or expectancy, (3) intentional and unjustified act of interference on part of interferer, (4) proof that

interference caused harm sustained, and (5) damage to party whose relationship or expectancy was disrupted. *Table Steaks v. First Premier Bank, N.A.*, 650 N.W.2d 829, 835 (S.D. 2002). Each of the required elements of this claim have been established based on the evidentiary submissions from Midland National, and as a result of Castaneira's default. Default judgment will not be entered on Midland National's RICO claim. To state a claim under 18 U.S.C. § 1962(c), a plaintiff must establish: "(1) the existence of an enterprise; (2) conduct by the defendants in association with the enterprise; (3) the defendants' participation in at least two predicate acts of racketeering; and (4) conduct that constitutes a pattern of racketeering activity." *In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 767 (8th Cir. 2003). Although Midland refers to "Castaneira and his associates and affiliates comprising the Castaneira Extortion Enterprise" on page 51 of Midland's Answer, Affirmative Defenses and Counterclaims (doc. 10), there is no showing either in the counterclaim or in the various affidavits submitted by Midland that there were any other persons or organizations that were a part of this undertaking by Castaneira. Instead, it appears that Castaneira was a one man band, and that will not support the enterprise element of a RICO claim.

### Injunctive Relief

7. The Court will convert the preliminary injunction into a final, permanent injunction, finding that each of the elements necessary to support the entry of a permanent injunction have been satisfied, as follows:

    a. The Court finds that Midland National's prior submissions establish its entitlement to the requested injunctive relief, on the merits. The Court finds that Castaneira normally would enjoy a first amendment right to criticize and disparage Midland National so long as such disparagement and criticism was truthful. The Court finds, however, that Castaneira coupled his disparagement and criticisms of Midland National with extortionate demands to Midland National's agents and to Midland National directly. The Court finds, among the other acts of extortion identified in the papers filed by Midland National, that Castaneira's demand for the payment of over $500,000 in cash and loans in exchange for shutting down his website and ending his other activities detrimental and disparaging to Midland National was extortion, rather than an innocent settlement demand. The Court finds that Castaneira expressly linked the promised shutdown of the site and the

cessation of disparaging activities to the demand for monetary payments.

b. The Court finds that there is no adequate remedy at law for the harm being inflicted on Midland National and its agents as a result of Castaneira's disparagement and extortion. The Court finds that although Midland National's agents are not parties to this action, the harm inflicted on these agents ultimately causes irreparable harm to Midland National as well. The damages resulting from the impaired good will, reputation, agent relationships, and customer relationships resulting from Castaneira's disparagement and extortion cannot possibly be quantified fully, and represents both actual and threatened irreparable harm.

c. The Court finds that there is no harm to Castaneira in granting the Order for a Permanent Injunction that is entitled to the protection of the law. Although Castaneira normally would have the right to engage in free speech that disparaged Midland National, so long as such speech was truthful, the Court finds that once Castaneira coupled his criticisms and disparagement of Midland National with his extortionate demands for the forfeiture of agent contracts and the payment of cash, Castaneira forfeited his right to engage in such otherwise protected speech. The Court finds that extortionate speech enjoys no Constitutional protection. Thus, when balancing the legitimate interests of Midland National and its agents from being free from extortion against the absence of any protected interest in engaging in extortionate conduct, a permanent injunction is properly granted.

d. The Court finds that there is a strong public interest in the exercise of free speech, and concludes that injunctions preventing speech must not improperly infringe on the right to free speech. The Court nonetheless concludes that there is no Constitutional right to engage in extortionate speech, regardless of the truth or falsity of the speech, and regardless whether such speech would otherwise be Constitutionally protected if not coupled with an extortionate demand for money and other things of value. On balance, the Court finds that Castaneira has forfeited his right to state his facts and opinions concerning Midland National because he has coupled the communication of those facts and opinions with extortionate demands.

8. The Court grants Midland National's request for a Permanent Injunction as follows:

   a. Nothing in this Order is intended to restrict Castaneira from responding to unsolicited written communications posed to Castaneira subsequent to the entry of the Injunction concerning Midland National. The Injunction is intended to prohibit and restrain affirmative and unsolicited communications by Castaneira disparaging of Midland National, its agents, representatives, or employees, or its insurance or financial products, based on the Court's finding that Castaneira has employed such affirmative communications as a vehicle for extortion.

   b. Castaneira is hereby ordered to immediately de-publish any websites, blogs, or other web-based comments he has published or has caused to be published that disparage Midland National, its agents, representatives, or employees, or its insurance or financial products, including without limitation the website and blogs located at www.midland-national-life-review.com and http://midlandnationallifereview.blogspot.com, the Google banner advertisement published through the Google AdWords program, the comments on electronic message boards, including without limitation comments posted on ripoffreport.com, complaints.com, complaintsboard.com and pissedconsumer.com, the "press releases" and similar materials published on the World Wide Web, including without limitation EIN News (http://www.einnews.com).

   c. Castaneira is hereby ordered to immediately cease and desist all mass communications disparaging Midland National, its agents, representatives, or employees, or its insurance or financial products, including without limitation the transmission of emails, the posting of comments on the World Wide Web, the issuance of "press releases," the holding of "press conferences," or the transmission of materials by U.S. mail.

   d. Castaneira is hereby ordered to immediately cease and desist all unsolicited communications of any kind disparaging Midland National, its agents, representatives, or employees, or its insurance or financial products to any third persons, including without limitation communications to Midland National's agents, employees, customers, or members of the

      public who are contemplating doing business with Midland National.

   e. This Injunction prohibits Castaneira from personally engaging in any of the prohibited activities, directly or indirectly, by proxy or otherwise, and further enjoins all persons who are in active concert or participation with Castaneira.

9. Based on the testimony of Robert TeKolste during the September 21, 2010 hearing, and based on the submissions of Midland National filed in support of the motion for default judgment and contempt of court, the Court finds that Castaneira has not complied with the Court's September 8, 2010 Temporary Restraining Order or the Court's September 23, 2010 preliminary injunction, including without limitation due to Castaneira's failure to de-publish the Google banner advertisement that includes disparaging content and provides a link to the www.midland-national-life-review.com website. See also September 21, 2010 Hearing Exhibit 1. Pursuant to Fed. R. Civ. P. 65(d)(2), because this Permanent Injunction requires the immediate de-publication of such materials, Google and any other sponsoring entity may de-publish materials encompassed within the scope of this Injunction upon being provided a copy of this Injunction, without any prior consent, approval, or direction from Castaneira himself.

10. Thus, IT IS HEREBY ORDERED that because the movant has prevailed in this action, there is no adequate remedy at law, the balance of equities favor an injunction, and the entry of an injunction serves the public interest, JUDGMENT IS HEREBY ENTERED ENJOINING Castaneira and any persons acting in concert with or on behalf of Castaneira, as set forth in detail in ¶¶ 8-9 of this order for judgment, and is binding upon such persons upon being provided with a copy of this judgment and injunction.

### Compensatory Damages

11. Based upon the evidentiary submissions and points and authorities submitted by Midland National in advance of the October 17, 2011 hearing, and served upon Castaneira in advance of the hearing by U.S. Mail and email, and based further on the reasons stated by the Court on the record during the October 17, 2011 hearing, the Court hereby orders that Midland National has proven its damages to a reasonable degree of certainty, finds that its presentation of damages is conservative and understated, finds that such reputational and lost profit damages are inherently difficult if not impossible to fully ascertain, and specifically finds that the following items of

compensatory damages have been established and shall be awarded in the total amount of $645,650.21 pursuant to the entry of default judgment on the tortious interference claim:

   a. Damages for enhanced security costs in the amount of $523,907.00. *See* Tekolste Declaration at ¶¶ 8-9, and Exhibits A and B, Docket Number 73.

   b. Damages for professional public relations services in the amount of $13,474.60. *See* Tekolste Declaration at ¶¶ 8, 10, 19-20 and Exhibit C, Docket Number 73.

   c. Damages for past and future lost profits in the total amount of $108,268.61. *See* Tekolste Declaration at ¶¶ 17; and Declarations of Bowman; Hoffman; McArthur; Purtell; Spicer; Tyner; Wheeler; and Yanacheak, Docket Numbers 66-74.

12. Accordingly, IT IS HEREBY ORDERED that monetary judgment is entered as damages on the tortious interference claim in the amount of $645,650.21.

### Final Judgment

13. Final Judgment in the form set forth in this order is HEREBY ENTERED.

It is SO ORDERED this 9th day of November, 2011.

BY THE COURT:

*[signature]*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
By: *[signature]* Colleen Schulte
   Deputy

(SEAL)